UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HERSY JONES, JR. | CIVIL DOCKET NO. 15-2766 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LOUISIANA SUPREME COURT, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are several Rule 12(b)(1), 12(b)(5), and 12(b)(6) Motions to Dismiss Plaintiff Hersy Jones, Jr.'s ("Jones") federal civil rights complaint by Defendants the Louisiana Supreme Court, Charles B. Plattsmier, Jr. ("Plattsmier"), Robert Kennedy ("Kennedy"), and the Louisiana Attorney Disciplinary Board ("the Board") (collectively "Defendants"). See Record Documents 7, 12, and 33. Several other Motions are also before the Court: (1) Jones' Motion to Strike Plattsmier and Kennedy's Motion to Dismiss; (2) the Louisiana Supreme Court's Motion to Set Aside Default; and (3) Jones' Motion to Reconsider the Court's denial of his Motion for Leave to File a Supplemental Memorandum in Opposition to Plattsmier and Kennedy's Motion to Dismiss. See Record Documents 17, 34, and 44.

For the reasons stated in the instant Memorandum Ruling, Defendants' Rule 12(b)(1) Motions (Record Documents 7, 12, and 33) are hereby **GRANTED**, and all of Jones' claims are hereby **DISMISSED WITHOUT PREJUDICE**. The Louisiana Supreme Court's Motion to Set Aside Default (Record Document 34) is hereby **GRANTED**. Jones' Motion to Strike Plattsmier and Kennedy's Motion to Dismiss (Record Document 17) and Jones' Motion to Reconsider the Court's denial of his Motion for Leave to File a

Supplemental Memorandum in Opposition to Plattsmier and Kennedy's Motion to Dismiss (Record Document 44) are hereby **DENIED AS MOOT**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Jones, an African-American, is a former attorney who was disbarred from the Louisiana bar in 2007. The facts underlying Jones' disbarment may be found in In re Jones, 952 So. 2d 673 (La. 2007). In the instant action, Jones asserts several federal constitutional claims against Defendants, primarily basing these claims on arguments that Defendants treated him differently than white attorneys who committed similar violations of professional conduct rules. See Record Document 1. Jones argues that Defendants' actions violated his First Amendment rights to freedom of speech and association, his rights under the Takings Clause of the Fifth Amendment, and his rights under the Due Process Clause of the Fourteenth Amendment. See id. at 2. He also asserts various defects in the attorney discipline procedure, such as allegations that the formal disciplinary charges filed against him did not match the ultimate conclusions made by the Hearing Committee assigned to hear the disciplinary case against him. See id. at 11.

Jones filed the instant action on December 1, 2015. See id. Defendants Plattsmier and Kennedy filed their Motion to Dismiss on May 4, 2016. See Record Document 7. The Board filed its Motion to Dismiss on May 20, 2016. See Record Document 12. Jones filed a Memorandum in Opposition and Motion to Strike Plattsmier and Kennedy's Motion to Dismiss on June 1, 2016. See Record Document 17. On June 6, 2016, Jones filed a Supplemental Memorandum in Opposition to Plattsmier and Kennedy's Motion to Dismiss, which the Court construed as a proposed supplemental memorandum and Motion for Leave to File such a memorandum. See Record Documents 20 and 43.

On August 2, 2016, Jones requested that the Clerk of Court enter a default as to the Louisiana Supreme Court for failing to file a timely answer. See Record Document 29. On August 4, 2016, the Clerk of Court entered a default against the Louisiana Supreme Court. See Record Document 32. On August 8, 2016, the Louisiana Supreme Court filed a Motion to Dismiss and a Motion to Set Aside Default. See Record Documents 33 and 34. On October 3, 2016, the Court denied Jones' Motion for Leave to file his proposed Supplemental Memorandum. See Record Document 43. On October 23, Jones filed a Motion for Reconsideration of the Court's decision on his Motion for Leave to File his Supplemental Memorandum. See Record Document 44. Jones has responded to all of the Motions to Dismiss. See Record Documents 17, 22, and 38.

## LAW AND ANALYSIS

### I. Legal Standards

#### A. The Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows parties to seek dismissal of a case on the ground that the court lacks subject matter jurisdiction over the action. When a defendant files a Rule 12(b)(1) motion, the plaintiff, as the party asserting federal jurisdiction, bears the burden of establishing that the Court has jurisdiction. See New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 327 (5th Cir. 2008). When a party challenges the court's subject matter jurisdiction based only on the complaint, it is a "facial attack," and the court scrutinizes the pleadings, taking the allegations as true, to determine whether the claimant has sufficiently alleged subject matter jurisdiction. Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). Conclusory

allegations, however, do not have to be taken as true. See Lacano Invs., LLC v. Balash, 765 F.3d 1068, 1071 (9th Cir. 2014).

### B. The Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-556. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Iqbal, 556 U.S. at 678 (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, Texas, 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Additionally, courts must also accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible

under the Iqbal and Twombly standard to survive such a motion. See id. at 678-679. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558.

## II. Analysis

Defendants argue that Jones' claims should be dismissed for the following reasons: (1) the Court does not have subject matter jurisdiction over Jones' claims under the Rooker-Feldman doctrine; (2) the Court does not have jurisdiction over Jones' claims under the Eleventh Amendment to the United States Constitution; (3) absolute and/or qualified immunity protects Plattsmier and Kennedy from suit in their individual capacities; (4) Jones' suit is prescribed; and (5) the Louisiana Supreme Court lacks procedural capacity. See Record Documents 7, 12, and 33. The Court concludes that (1) it does not have subject matter jurisdiction over the instant action under the Rooker-Feldman doctrine, and (2) even if the Court had subject matter jurisdiction, Plattsmier and Kennedy would be protected by absolute immunity. The Court need not address Defendants' other grounds for dismissal.

### A. The Rooker-Feldman Doctrine Bars Jones' Claims

Federal courts are courts of limited subject matter jurisdiction. Statutes like 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity of citizenship jurisdiction) grant the federal district courts jurisdiction to adjudicate certain "cases" and "controversies" that the judiciary branch is permitted to adjudicate under Article III, § 2 of the United States Constitution. Under 28 U.S.C. § 1257(a), the United States Supreme

Court has discretionary appellate jurisdiction over the decisions of the highest courts of the States when certain federal constitutional or statutory questions are involved.

The Rooker-Feldman doctrine states that the United States Supreme Court's appellate jurisdiction under § 1257 "precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under" §§ 1331, 1332, and others. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005); see Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); see D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). This doctrine "recognizes that 28 U.S.C. § 1331 [among others] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to" the United States Supreme Court alone under § 1257(a). Id. at 292, quoting Verizon Md. Inc. v. PSC, 535 U.S. 635, 645 n.3 (2002). Thus, a federal district court does not have subject matter jurisdiction over a case that "call[s] upon the District Court to overturn an injurious state-court judgment," as the United States Supreme Court has exclusive jurisdiction over such a case. Id.

As in many cases against state bar disciplinary boards and members of such boards, Jones seeks to use the instant federal civil rights action to obtain review of and collaterally attack a state bar disciplinary decision. See, e.g., Riley v. La. State Bar Ass'n, 402 Fed. Appx. 856 (5th Cir. 2010); Kline v. Biles, 2016 U.S. Dist. LEXIS 158229 (D. Kan. 2016). Much of Jones' complaint is devoted to alleging discrepancies between arguments and statements made in hearings regarding the allegations against him and the ultimate findings of the Hearing Committee, the Board, and the Louisiana Supreme Court. See Record Document 1 at 10-11. For example, Jones alleges that at one point, Kennedy

argued that Louisiana Rule of Professional Conduct 1.5 did not apply to one of the allegations, but the Hearing Committee deciding the case eventually found that Jones' conduct did violate Rule 1.5 See id. at 10. Jones also alleges that the formal disciplinary charges filed against him did not match the ultimate conclusions the Hearing Committee made. See id. at 11.

These allegations place the instant action squarely within the realm of the Rooker-Feldman doctrine: they seek to overturn the results of state court proceedings through a collateral attack in federal court on the basis that the state courts incorrectly decided the case. See Kline, 2016 U.S. Dist. LEXIS 158229 at *14-16, n.7 (stating "every federal appeals court has held that the Rooker-Feldman doctrine precludes an attorney from challenging the result of his or her state disciplinary hearing in a lower federal court, including attacking the process leading to the decision" and citing cases from every circuit). Indeed, Feldman itself involved a denial of admission to the Washington, D.C., bar affirmed by the District of Columbia Court of Appeals, a decision that the plaintiff collaterally attacked in federal district court on federal constitutional grounds. See Feldman, 460 U.S. at 465-75.[1] The federal district court held that it did not have subject matter jurisdiction over the case, but the Court of Appeals for the District of Columbia

---

[1] Washington, D.C., is not a state, but decisions of the District of Columbia Court of Appeals, the highest Court in the District of Columbia for hearing cases under D.C. law, are treated like those of the highest Court of a state under 28 U.S.C. § 1257(b). Feldman was originally filed in federal district court for the District of Columbia, was appealed to the federal Court of Appeals for the District of Columbia Circuit, and then finally was appealed to the United States Supreme Court. See 460 U.S. at 463-470. The Court of Appeals for the District of Columbia Circuit is a federal appellate court hearing appeals from the federal district court for the District of Columbia and should not be confused with the District of Columbia Court of Appeals, which hears appeals from the local trial court, the Superior Court of the District of Columbia.

Circuit reversed and held that the district court did have subject matter jurisdiction. See id. at 463. Citing to Rooker, the Supreme Court held that though the district courts do have jurisdiction to review the constitutionality of state bar rules generally, they do not have subject matter jurisdiction to review final judgments of a state court through a collateral attack. See id. at 476, 482-88. The Supreme Court then vacated the Court of Appeals for the District of Columbia Circuit's ruling, and held that (1) the district court did not have jurisdiction over the latter claims but (2) did have jurisdiction over the claim that challenged the constitutionality of one of the bar's admission rules. See id. at 487-88. Jones' allegations, like most of the allegations in Feldman, constitute a collateral attack on a final judgment of a state court rather than a constitutional challenge to a particular state bar rule. Thus, they take the instant action outside of the subject matter jurisdiction of this Court.

Jones cites, *inter alia*, Ohralik v. Ohio State Bar Association, 436 U.S. 447 (1978), and NAACP v. Button, 371 U.S. 415 (1963), to support his arguments. See Record Document 1 at 14, ¶ 65-66. Notably, however, though Ohralik also involved a challenge to a state bar's decision to sanction an attorney, it was before the Supreme Court on writ of certiorari. See Ohralik, 436 U.S. at 454 ("we noted probable jurisdiction in this case to consider the scope of protection of a form of commercial speech . . . we now affirm the judgment of the Supreme Court of Ohio"). Thus, the plaintiff there followed the correct procedure for challenging the decision of a state's highest Court, while Jones did not do so in the instant action.

In NAACP, the NAACP filed a lawsuit in federal district court challenging the constitutionality of several Virginia statutes regarding attorney solicitation. See NAACP,

371 U.S. at 417-19. Subject matter jurisdiction was not an issue in the case; the NAACP was mounting an as-applied challenge to state statutes under the Fourteenth Amendment rather than collaterally attacking the outcome of a particular state bar disciplinary proceeding. See id. at 417-70. Though the state bar rules challenged in Feldman were promulgated by the District of Columbia Court of Appeals rather than a statute passed by a legislature like those in NAACP, the Supreme Court's analysis in Feldman explains why claims in cases like NAACP and the one surviving claim in Feldman can be heard in federal district courts, while those like the claims in the instant action cannot:

> Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding. Instead, the district court may simply be asked to assess the validity of a rule promulgated in a nonjudicial proceeding [like those of the District of Columbia Court of Appeals]. If this is the case, the district court is not reviewing a state-court judicial decision. In this regard, 28 U. S. C. § 1257 does not act as a bar to the district court's consideration of the case and because the proceedings giving rise to the rule are nonjudicial the policies prohibiting United States district court review of final state-court judgments are not implicated. United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. *They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court. 28 U. S. C. § 1257.*

Feldman, 460 U.S. at 486 (emphasis added).

The other cases that Jones cites for support similarly do not sway the Court's conclusion that it simply does not have subject matter jurisdiction over any of the claims in the instant action. See Record Document 17 (citing cases that do not contradict Feldman). Jones' remedy, if any, was to be obtained from the United States Supreme Court on writ of certiorari from the Louisiana Supreme Court's 2007 decision disbarring

him. See 28 U.S.C. § 1257(a); see In re Jones, 952 So. 2d 673 (La. 2007). Jones' case must be dismissed without prejudice for lack of subject matter jurisdiction.

### B. Absolute Immunity Protects Plattsmier and Kennedy from Suit in Their Individual Capacities.

Even if the Court did have subject matter jurisdiction over the claims in the instant action, the claims against Plattsmier and Kennedy in their individual capacities would be barred by absolute immunity. Under 42 U.S.C. § 1983, a claimant may assert a claim for relief against a person who, acting under the color of state law, allegedly violated the claimant's rights under federal law. Section 1983 actions are often brought against persons acting under the color of state law in their individual capacity, but these persons are often protected from suit by absolute or qualified immunity. The concern with ending a case at a point of minimum expenditure of time and money that the Court considers at the Rule 12(b)(6) stage is particularly acute when the defendant raises an immunity defense. See Rehberg v. Paulk, 132 S.Ct. 1497, 1503 (2012) (absolute immunity from civil liability allows the officials it protects the freedom to perform their duties "with independence and without fear of consequences"); see also Iqbal, 556 U.S. at 685, 129 S. Ct. at 1953 ("the basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery") (internal quotations and citations omitted). In fact, immunity defenses truly are "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (referring to qualified immunity).

Absolute immunity serves as a complete immunity from suit for officials in their individual capacities, and has been applied to legislators, judges, witnesses at trial, and prosecutors. See Rehberg, 132 S. Ct. at 1503. Under the "functional approach" the

Supreme Court has outlined for determining whether a particular official is protected by absolute immunity, courts must look to "the nature of the function performed [by the official], not the identity of the actor who performed it." Kalina v. Fletcher, 522 U.S. 118, 127 (1997). Absolute immunity for prosecutors applies when prosecutors take actions in their role as advocates for the state by engaging in conduct that is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 429-30 (1976). Absolute immunity protects prosecutors from suit for, among other actions, "initiating a prosecution." Id. at 431. However, when a prosecutor takes actions that are too attenuated from the judicial phase of the criminal process, he or she is only protected by qualified immunity. See Van de Kamp v. Goldstein, 555 U.S. 335, 342-43 (2009). Louisiana federal courts have held that prosecutors for the Board are entitled to absolute immunity from suit, as their function under the functional approach is sufficiently similar to that of criminal prosecutors to entitle them to such immunity. See, e.g., Forman v. Ours, 804 F. Supp. 864, 868 (E.D. La. 1992).

Jones' allegations against Plattsmier and Kennedy, even if true, would be barred by absolute immunity because they are "intimately associated with the judicial phase" of a process that is analogous to a criminal prosecution. Imbler, 424 U.S. at 429-30. Jones alleges that Plattsmier prosecuted a disciplinary action against a white lawyer in Alexandria for similar conduct, but did not prosecute that lawyer for breach of the same ethical rules. See Record Document 1 at ¶¶ 29, 78. Jones alleges that Kennedy (1) "knowingly misled" the Hearing Committee in one of the disciplinary actions against Jones; (2) prosecuted Jones for failing to attempt to arbitrate a fee dispute with a client when Kennedy had not done so for certain white lawyers; (3) stated that he was not

prosecuting Jones for breaking a certain ethical rule but allowed the Hearing Committee to find that he had done so; and (4) chose to prosecute Jones for ethical violations because Jones' practice involved "representing African American families whose sons had been killed by white police officers." Id. 1 at ¶¶ 12, 22-30, 45-55, 64, and 78.

Jones attempts to argue that Plattsmier and Kennedy do not have absolute immunity from suit in the instant action because his allegations against them are based upon their investigative rather than their prosecutorial functions. See Record Document 17 at 7-8. This argument has no merit. The allegations detailed above all have to do with the initial decision to prosecute Jones for his ethical violations, the decisions regarding prosecution of similarly situated white attorneys, and the actions taken during the prosecutions themselves. In fact, Jones extensively quotes Kennedy's statements during some of the hearings on the charges against Jones, and he lists several examples of other cases where Plattsmier and Kennedy chose to pursue a different set of charges against white attorneys. See Record Document 1 at 4-7. Because all of these allegations relate to the fulfillment of prosecutorial functions during the judicial phase of the attorney discipline process, all of Jones' claims against Plattsmier and Kennedy in their individual capacities would be barred by absolute immunity even if the Court had subject matter jurisdiction over such claims.

### C. The Other Outstanding Motions

Several other Motions aside from Defendants' Rule 12(b) Motions to Dismiss are also before the Court: (1) Jones' Motion to Strike Plattsmier and Kennedy's Motion to Dismiss; (2) the Louisiana Supreme Court's Motion to Set Aside Default; and (3) Jones' Motion to Reconsider the Court's denial of his Motion for Leave to File a Supplemental

Memorandum in Opposition to Plattsmier and Kennedy's Motion to Dismiss. See Record Documents 17, 34, and 44. Jones' Motion to Strike Plattsmier and Kennedy's Motion to Dismiss (Record Document 17) and Jones' Motion to Reconsider the Court's denial of his Motion for Leave to File a Supplemental Memorandum in Opposition to Plattsmier and Kennedy's Motion to Dismiss (Record Document 44) are moot. The Court has an independent obligation to determine whether it has subject matter jurisdiction in a particular case. Even if the Court did not have such an obligation and granted Jones' Motion to Strike Plattsmier and Kennedy's Motion to Dismiss and allowed Jones to file his Supplemental Memorandum in Opposition, the same arguments for dismissal of the case for lack of subject matter jurisdiction would be before the Court through the Louisiana Supreme Court's Motion to Dismiss and that of the Board. See Record Documents 12 and 33. Thus, Jones' two Motions (Record Documents 17 and 44) are hereby **DENIED AS MOOT**, as they have no effect on the Court's decision that it lacks subject matter jurisdiction over the instant action.

As to the Louisiana Supreme Court's Motion to Set Aside Default (Record Document 34), it is axiomatic that when a Court renders judgment in a case over which it does not have subject matter jurisdiction, the judgment is void. See Brumfield v. La. State Bd. of Educ., 806 F.3d 289, 298 (5th Cir. 2015). Thus, the Louisiana Supreme Court's Motion (Record Document 34) is **GRANTED**, as the Court lacks subject matter jurisdiction to render judgment in the instant action. The Clerk of Court's Entry of Default is hereby **VACATED**.

## CONCLUSION

Though Jones attempts to couch the allegations in the instant action in the language of an action under 42 U.S.C. § 1983, the gravamen of Jones' complaint is that the disciplinary procedures Defendants instituted against him were unfair and reached an incorrect result. See Record Document 1. Federal district courts do not have subject matter jurisdiction over such claims under the Rooker-Feldman doctrine. As such, Defendants' Rule 12(b)(1) Motions (Record Documents 7, 12, and 33) are hereby **GRANTED**, and all of Jones' claims against Defendants are hereby **DISMISSED WITHOUT PREJUDICE**.

Jones' Motion to Strike Plattsmier and Kennedy's Motion to Dismiss (Record Document 17) and Jones' Motion to Reconsider the Court's denial of his Motion for Leave to File a Supplemental Memorandum in Opposition to Plattsmier and Kennedy's Motion to Dismiss (Record Document 44) are hereby **DENIED AS MOOT**.

The Louisiana Supreme Court's Motion to Set Aside Default (Record Document 34) is **GRANTED**, as the Court lacks subject matter jurisdiction to render judgment in the instant action. The Clerk of Court's Entry of Default is hereby **VACATED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 29th day of March, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE